[Civ. No. 17963.   Second Dist., Div. Three.   May 15, 1951.]

ANNABELLE JONES, Appellant, v. CITY OF LOS ANGELES (a Corporation), Respondent.

Jones & Wiener for Appellant.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, and Joseph N. Owen, Deputy City Attorney, for Respondent.

SHINN, P. J.—Annabelle Jones, plaintiff and appellant, was standing on the sidewalk at the southwest corner of Spring and Eighth Streets, in Los Angeles. She was close to an electrolier consisting of a cast iron base about 3 feet high and a lamppost with crossarms supporting five large light globes. The total height of the standard to the top of the center globe was 13½ or 14 feet. A truck and van-type trailer operated by Ray Carter Trucking Company approached from the west. The right front corner of the van struck the top of the standard and broke off the pole where it joined the base. Mrs. Jones was struck by the falling sections of the pole and severely injured; she sued the city and the individual partners who composed the trucking company. In a jury trial the verdict and judgment were against the city, but in favor of the trucking company. Plaintiff moved for a new trial as to the trucking company and the city also moved for a new trial. The court granted·both motions. The trucking company did not appeal; plaintiff appealed from the order granting the motion of the city.

In granting the motions the court specified insufficiency of the evidence to support the verdict as to each defendant. It is not claimed by the city that the order is supportable for error in the trial. The sole question to be considered is whether it was an abuse of discretion to grant the motion of the city upon the ground of insufficiency of the evidence.

It is contended by plaintiff that the electrolier was placed

so close to the curb as to create an obviously dangerous and defective condition of public property of which the city had knowledge, that such condition was a proximate cause of the accident, and that liability of the city results under section 53051 of the Government Code, commonly referred to as the Public Liability Act, a codification of Act 5619, 2 Deering's General Laws, page 2630, which was in force at the time of the accident.

The physical facts which contributed to the happening of the accident are the following: The base of the standard was imbedded 12 inches from the face of the adjacent curb; the width of the crossarms which were at right angles to each other was 39½ inches; the thickness of the metal at the break was 9/16th of an inch; the width of the body of the trailer was 7 feet 9 inches; the width between the outsides of the wheels was 8 feet; the top of the trailer was 12 feet 5½ inches above ground level; there was an inlet through the curb and a culvert under the sidewalk, immediately west of the lamppost, for the diversion of surface waters from the gutter; opposite the inlet the center of Eighth Street, at a point 20 feet from the curb, was approximately 10 inches above the level of the gutter; easterly from that point, the gutter rose gradually to within one inch of the sidewalk level at the corner; the lamppost was 4.8 feet west of the westerly edge of the sidewalk of Spring Street. Naturally, the slope of Eighth Street caused the body of the trailer to incline toward the south. Plaintiff claims that it was shown by uncontradicted testimony that the light standard inclined toward the north. There was testimony that after the accident the 3-foot base inclined toward the north and was almost an inch from the perpendicular. From this it is argued that at the top the inclination of the standard toward the street would be approximately 4 inches. A truck driver testified that he had observed on other occasions that the pole leaned toward the north. There was also evidence from which it could have been inferred that the inclination of the base might have been somewhat affected by the blow it received. Plaintiff argues earnestly against the reasonableness of such an inference. It is an arguable question of fact, but is not a determinative factor in the case, for reasons which will be developed.

Plaintiff contends that the described condition was incontestably dangerous and defective, and further, that it was conclusively shown to have been a proximate cause of the

accident. These conclusions are claimed to follow from the fact that the truck, while it was entirely upon the roadway, came in contact with the top of the light standard. It is claimed there was concurrent negligence upon the part of the truck driver and the city, as otherwise the accident would not have happened. We can readily agree that there is liability for plaintiff's injuries, but to say that as a matter of law the fault lay with one defendant or the other, or with both, would be quite another matter. Of necessity plaintiff argues that there was no basis in the evidence for a finding that a known dangerous and defective condition did not exist or that it was not a proximate cause of the accident. Therefore, it is said that it was an abuse of discretion to grant the city a new trial. We cannot agree that a verdict in favor of the city would have been without substantial support in the evidence.

■ A dangerous or defective condition, as a basis of liability, is one from which it would reasonably be anticipated injury would occur to those coming in contact with the condition. Stated otherwise, the question is whether the condition created an unreasonable hazard. Since the city is not an insurer of the safety of its property (*Nicholson* v. *City of Los Angeles,* 5 Cal.2d 361 [54 P.2d 725]), the degree of hazard created by a given condition of property is determinative as to whether it is a dangerous or defective condition within the purview of the statute. ■ If, therefore, the condition here described was one that did not involve an unreasonable risk of injury to motorists or pedestrians or property it was not a dangerous or defective condition, even though vehicles of unusual height would have to be handled with unusual care in passing. This is generally a question of fact. (*Adams* v. *Southern Pac. Co.,* 4 Cal.2d 731, 740 [53 P.2d 121]; *Warren* v. *City of Los Angeles,* 91 Cal.App.2d 678 [205 P.2d 719]; *Rose* v. *County of Orange,* 94 Cal.App.2d 688 [211 P.2d 45].)

■ We are satisfied that in the view of the evidence which tends most strongly to justify the order granting a new trial the primary question was one of fact and not of law. There was latitude within which reasonable minds might differ as to whether accidents should have been anticipated through contact of vehicles with the light standard. The southerly, or eastbound lane, for traffic on Eighth Street, was 10 feet 3 inches wide. Only vehicles of extreme height could have come into contact with the light standard. All the surround-

ing conditions were obvious to the users of the street. Drivers of trucks such as the one in question would be expected to know that the slope of the street would cause their vehicles to incline toward the south. There was ample room for passage of such vehicles in safety. Unquestionably the condition was hazardous to a degree. There are many conditions on and adjacent to streets which of themselves increase the degree of care that is required of drivers of vehicles, but it does not necessarily follow that they create unreasonable hazards. In maintaining poles upon sidewalks and parked areas a city has a right to anticipate that vehicle drivers will exercise care in their driving and conduct themselves with relation to conditions which are obvious to them with a view to their own safety. These were considerations for the trial court in the present case. We think there was room for reasonable difference of opinion as to whether it should have been anticipated by the city that vehicles using Eighth Street would come in contact with the light standard. On the one hand, as we have pointed out, there was the fact that certain types of vehicles would have to be driven at some distance from the curb to pass in safety, and with considerably more care than would be necessary with the usual run of motor vehicles. On the other hand, the slope of the pavement and the position of the pole would readily be observed by attentive drivers, and there was ample room for all vehicles to pass the point in safety. There was also evidence, which no doubt was considered by the trial court, that for a period of $2\frac{1}{2}$ years large numbers of such high van-type trailers had traversed the same route, under the same conditions, and without coming in contact with the light standard.

We are therefore of the opinion that the conclusion of the trial court to the effect that the verdict as to the city was against the weight of the evidence was not unreasonable. In determining the factual questions involved, the trial judge may have concluded either that the condition was not dangerous or defective, or that the negligence of the truck driver was the sole cause of the accident. These questions are closely related, if upon the facts presented they are not identical.

In *Stockwell* v. *Board of Trustees,* 64 Cal.App.2d 197, 204 [148 P.2d 405], it was said: ''Then, again, as to the question of proximate cause, where it is claimed that an intervening cause has broken the chain of causation, it has been repeatedly held that such a question is one of fact for the jury [citing authorities].'' In *Gibson* v. *Garcia,* 96 Cal.App.2d 681 [216

P.2d 119], the rule of proximate cause was discussed at some length and numerous authorities were cited. We adopt, by reference, as a part of the present opinion, our discussion of the rule in that case. The true test to be applied here is whether the city could reasonably have foreseen that the maintenance of the pole under the described conditions involved likelihood of injury to motorists or pedestrians. There was an additional item of evidence that had a bearing upon the immediate cause of the accident. Witnesses testified that as the truck approached the point of the accident the driver's head was turned and he was looking at vehicles to his left.

██ The negligence of the driver, of course, would not excuse the city if the condition of the light pole also was a concurring cause of the accident. We mention it only as a circumstance which the trial court could properly have considered in determining what the city should reasonably have anticipated and provided against in the performance of its statutory duty.

██ The question of proximate cause was clearly one of fact. It was the duty of the trial court to grant a new trial as to the city if the verdict was determined to be against the weight of the evidence. ██ This was a factual question which is not reviewable on appeal. ██ It is our duty to sustain the order if there was substantial evidence which would have justified a verdict in favor of the city. (*Perry* v. *Fowler*, 86 Cal.App.2d 635 [195 P.2d 78].) For the reasons stated, we are unable to say that the ruling was an improper exercise of the court's discretion.

The order is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied June 1, 1951, and appellant's petition for a hearing by the Supreme Court was denied July 12, 1951. Carter, J., voted for a hearing.